IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| EUFAULA DRUGS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:05cv300-MHT |
| | ) | (WO) |
| TMESYS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

This lawsuit is before the court on plaintiff Eufaula

Drugs, Inc.'s motion to remand to state court for want of

subject-matter jurisdiction.  The motion will be granted.


I. REMOVAL-AND-REMAND STANDARDS

"While a defendant does have a right, given by

statute, to remove in certain situations, plaintiff is

still the master of his own claim."  Burns v. Windsor

Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).  Put

differently, federal courts, as courts of limited

jurisdiction, possess jurisdiction to hear a particular

case only to the extent authorized by statute or the

Constitution.  <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994).

One statutory right of removal provided to the defendant, based on 'complete' diversity-of-citizenship jurisdiction, is when the state citizenship of all plaintiffs is different from that of all defendants, and the amount in controversy exceeds $ 75,000.  28 U.S.C. §§ 1332(a), 1441.  Another statutory right of removal exists under the Class Action Fairness Act of 2005 (hereinafter "CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.); CAFA authorizes diversity jurisdiction in class actions when the amount in controversy exceeds $ 5,000,000 and 'minimal' diversity exists, that is, diversity exists between "any" plaintiff class member and "any" defendant. 28 U.S.C. § 1332(d)(2).  For the purposes of CAFA, individual class members' claims may be aggregated to meet the amount-in-controversy requirement.  28 U.S.C. § 1332(d)(6).

2

## II. FACTUAL BACKGROUND

Plaintiff Eufaula Drugs, Inc., a pharmacy in Alabama, has brought this putative class-action lawsuit, on behalf of all similarly situated persons or entities, against defendant Tmesys, Inc., for whose members and insureds Eufaula Drugs agreed to dispense prescription medication.

According to the complaint, Tmesys agreed to reimburse Eufaula Drugs for filling name-brand prescriptions at a rate based on the average wholesale price. Eufaula Drugs alleges that Tmesys's reimbursement policy does not adequately reflect the proper average wholesale price, resulting in under-reimbursements to Eufaula Drugs. Eufaula Drugs alleges that Tmesys has therefore defrauded numerous pharmacies and breached numerous contracts.[1]

On February 14, 2005, Eufaula Drugs filed the complaint, which contained Tmesys's address and instructions for the clerk to serve the complaint through

_____

1. Notice of Removal (Doc. No. 1), Attachment 1, Complaint, ¶¶ 12, 14.

3

certified mail, in the Circuit Court for Barbour County, Alabama.[2]   The clerk did not issue the summons until February 28, however, because Eufaula Drugs's counsel did not file the summons or a completed certified mail card or provide the appropriate postage to the state court clerk's office until then.

Tmesys removed the case to this court on April 1, 2005, and Eufaula Drugs filed the instant motion to remand on May 2.   The court directed Eufaula Drugs to submit evidence as to why it failed to file the summons until two weeks after filing the complaint.   The court then held an evidentiary hearing on April 26, 2006, to resolve a factual dispute as to the cause of the delay in filing the summons, postage card, and postage.

Debbie Howard, the Deputy Clerk of the Barbour County Circuit Court, stated that she has an 'informal practice' regarding service of complaints.   When the complaint is to be served by certified mail, plaintiff's counsel is

---

2. Id., ¶ 6 & p. 11.

4

expected to file a completed summons and a completed certified mail form, as well as provide the appropriate postage.[3]  If counsel fails to comply with the practice, Howard generally will call the lawyer and ask counsel to complete the forms, but she recalled that she had completed the summons and certified mail card on several occasions.  However, she will not serve the complaint by mail (as opposed to arranging for service by the sheriff) unless the plaintiff provides the postage because the clerk's office budget is tight; in her own words, her practice is "about the money."

Howard further testified that her practice was not written or published and, to her knowledge, had nothing to do with the Alabama Rules of Civil Procedure, which she has not read.  Nonetheless, most lawyers, including those from Birmingham, are aware of her practice.  She testified that Richard Harrison, who was retained as

---

3. When the local sheriff serves the complaint, plaintiff is not expected to provide a completed summons or certified mail card.

counsel by Eufaula Drugs, usually completes the summons, postage card, and pays the postage when he files complaints in the Barbour County Circuit Court.  She acknowledged that she was capable of completing the summons and postage card in this case and nothing prevented her from serving this complaint, that is, she had all the necessary service information and could have initiated service immediately after receiving the complaint.

David Nix, the Clerk of the Barbour County Circuit Court, stated that there is no requirement that plaintiffs file a summons along with the complaint or fill out the postage card, although most lawyers do as a courtesy to the clerk's office.  He stated that the clerk's office generally does not pay for postage and generally will not serve the complaint by certified mail until the plaintiff pays for the postage, primarily because the clerk's office does not have sufficient money available.  Nonetheless, he stated that the clerk's

office had 'fronted' the postage fee on five or six occasions during the 35 years he had served as clerk. Finally, Nix acknowledged that the clerk's office was perfectly capable of completing service of process when Eufaula Drugs's complaint was filed, even though the office did not do so until Eufaula Drugs provided the summons, certified mail card, and postage.

Richard Harrison, local counsel for Eufaula Drugs, testified that his secretary usually completes a summons, fills out the postage card, and affixes the correct postage to the envelop before filing the complaint, as a courtesy to the clerk's office; and that he did not file the summons or postage in this case simply and only because his secretary, whom he had recently hired, was not adept at using computers and took longer than expected to create the complaint, and he was pressed for time to file the complaint before 4:30 p.m., when the clerk's office closes.  He fired his secretary the following day when she was unable to generate the summons

properly.  Although he was aware of Howard's practice, he felt no great urgency to complete the summons or certified mail card or pay the postage himself because it was his understanding of the Alabama Rules of Civil Procedure that the summons was not required to be filed along with the complaint and he expected that the clerk's office would notify him if there were any problems with serving the complaint.  Essentially, because he was without secretarial help, he elected not to provide the courtesy to the clerk's office.


## III. DISCUSSION

Tmesys advances two grounds of possible subject-matter jurisdiction over this case: the interaction of diversity-of-citizenship jurisdiction and supplemental jurisdiction, and jurisdiction under CAFA.

8

A. Diversity and Supplemental Jurisdiction

Because Eufaula Drugs made one claim for reimbursement to Tmesys in 2002, for the amount of $ 64.80, Eufaula Drugs's lawsuit does not satisfy the amount-in-controversy requirement for diversity jurisdiction.[4] Nonetheless, Tmesys argues that, because Walgreens, a possible member of the putative class that is also diverse from Tmesys, could seek damages in excess of $ 75,000, this court can exercise jurisdiction over Eufaula Drugs's claim by virtue of supplemental jurisdiction, 28 U.S.C. § 1367. Essentially, Tmesys contends that the amount-in-controversy requirement of § 1332(a) can be satisfied by the claims of an unnamed class member, provided that the putative class member is

_____

4. The court understands that Eufaula Drugs is an Alabama corporation with its principal place of business in Alabama, while Tmesys is a Florida corporation with its principal place of business there, so the parties are diverse.

9

also completely diverse in citizenship from the
defendant.[5]

     This argument is without merit.  In Exxon Mobil Corp.
v. Allapattah Servs., Inc., 125 S.Ct. 2611 (2005), the
Supreme Court held that "where the other elements of

---

     5. Two district courts in the Eleventh Circuit have
concluded that, if a court would have diversity
jurisdiction over putative class members, the court may
exercise supplemental jurisdiction over claims by named
or representative plaintiffs.  Forest v. Penn Treaty Am.
Corp., 270 F.Supp.2d 1357 (M.D. Fla. 2003) (Hodges, J.);
Chapman Funeral Home, Inc. v. Nat'l Linen Serv., 178
F.Supp.2d 1247 (M.D. Ala. 2002) (Albritton, J.).  Those
decisions were based on Morrison v. Allstate Indem. Co.,
228 F.3d 1255, 1273 (11th Cir. 2000), in which the
Eleventh Circuit remanded a case to give the plaintiffs
an "opportunity to show whether there are other class
members who may make a 'good faith' allegation that they
have incurred close to $ 75,000 in damages."

     The district courts concluded that this language from
Morrison suggested that the claims of unnamed putative
class members could be considered for purposes of
determining amount in controversy.  Forest, 270 F.Supp.2d
at 1365; Chapman, 178 F.Supp.2d at 1250.  The Eleventh
Circuit has subsequently rejected that reading of
Morrison, explaining that the remand was limited to
allowing "the named plaintiffs ... to establish that
their claims met the jurisdictional minimum amount in
controversy."  Allapattah Servs., Inc. v. Exxon Corp.,
333 F.3d 1248, 1523 n.2 (11th Cir. 2003) (emphasis
added).

jurisdiction are present and at least one <u>named plaintiff</u>
in the action satisfies the amount-in-controversy
requirement, § 1367 does authorize supplemental
jurisdiction over the claims of other plaintiffs in the
same Article III case or controversy, even if those
claims are for less than the jurisdictional amount
specified in the statute setting forth the requirements
for diversity jurisdiction." <u>Id</u>. at 2615 (emphasis
added). This language clearly suggests that at least one
class representative or named plaintiff must meet the
amount-in-controversy requirement before supplemental
jurisdiction can arise.

In fact, various circuit courts have explicitly held
as much, <u>Rosmer v. Pfizer Inc.</u>, 263 F.3d 110, 114 (4th
Cir. 2001) ("§ 1367 confers supplemental jurisdiction in
diversity class actions, so long as one named plaintiff
has a claim giving a federal court original
jurisdiction"); <u>Gibson v. Chrysler Corp.</u>, 261 F.3d 927,
937 (9th Cir. 2001) (court has original jurisdiction if

the named plaintiff or plaintiffs satisfy the amount-in-controversy requirement); In re Brand Name Prescription Drugs Antitrust Litig., 123 F.3d 599, 607 (7th Cir. 1997) ("At least one named plaintiff must satisfy the jurisdictional minimum [for supplemental jurisdiction to exist]."); In re Abbott Labs., 51 F.3d 524, 529 (5th Cir. 1995) (supplemental jurisdiction exists only if a class representative meets the amount-in-controversy requirement), and these decisions were cited favorably in Allapattah, 125 S. Ct. at 2616, 2621.

There are commonsensical reasons for not basing jurisdiction solely upon a putative class member's satisfaction of the amount-in-controversy requirement. "A class action complaint is filed only by a named plaintiff or plaintiffs. ... The certification decision is not made at the time of filing, but, rather, as soon as practicable after the commencement of an action." Gibson, 261 F.3d at 937 (internal quotations and alterations omitted). Were a federal court to exercise

diversity jurisdiction on the basis of a putative class member and then decide not to certify the class or to certify it in such a way as to exclude the unnamed plaintiff, the court would be faced with a cause of action over which it had no jurisdiction. Given that "[f]ederal courts are courts of limited jurisdiction" and that "removal statutes are construed narrowly," Burns, 31 F.3d at 1095, basing jurisdiction solely upon the characteristics of a hypothetical plaintiff is inappropriate guesswork for a federal court.

Finally, Tmesys's argument is inconsistent with the supplemental-jurisdiction statute itself, which provides that "in any action in which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are [closely related to the claims in the action within such original jurisdiction]." 28 U.S.C. § 1367. Supplemental jurisdiction requires that the court have original jurisdiction over at least one claim of one plaintiff.

The court is at a loss to explain how it can obtain jurisdiction over Eufaula Drugs's claim through supplemental jurisdiction when that claim is, in fact, the only claim currently in this case. Simply put, the court does not have original jurisdiction over Eufaula Drugs's claims against Tmesys, so there is no "action in which the district court [has] original jurisdiction," 28 U.S.C. § 1367.

Consistent with the cited authorities and logic, the court concludes that it lacks diversity-of-citizenship jurisdiction, based on § 1367, over this case.[6]

_____

6. Tmesys laments that Eufaula Drugs and its potential co-class members are manipulating the system to avoid federal court, and Tmesys is probably correct. Nonetheless, Eufaula Drugs's claims are outside the reach of § 1332(b) and § 1367, so diversity-of-citizenship jurisdiction is lacking. CAFA was designed to remedy "[a]buses in class actions ... [that] keep[] cases of national importance out of Federal court," P.L. 109-2, § 2(a)(4), and the court presumes that the expansion of federal jurisdiction over class actions that CAFA represents would have been unnecessary if this type of forum shopping were not possible under the current jurisdictional regime.

14

### B. The Class Action Fairness Act of 2005

### i.

Although CAFA might give this court jurisdiction over this case, CAFA applies only to civil actions that "commenced" on or after February 18, 2005, the date of CAFA's enactment.  Pub. L. 109-2, § 9.  For the purposes of CAFA, an action "commenced" when it was commenced in state court.[7]  Whether an action has commenced in state court is generally controlled by state law, <u>see</u> <u>Herb v. Pitcairn</u>, 324 U.S. 117, 120 (1945) ("Whether any case is pending in the Illinois courts is a question to be determined by Illinois law.");  <u>Cannon v. Kroger Co.</u>, 837 F.2d 660 (8th Cir. 1988) ("It is clear that a federal court must honor state court rules governing commencement

---

7. An action commences, for the purposes of CAFA, when it is commenced in state court, and not upon removal to federal court.  <u>Knudsen v. Liberty Mut. Ins. Co.</u>, 411 F.3d 805 (7th Cir. 2005); <u>Pritchett v. Office Depot, Inc.</u>, 404 F.3d 1232 (10th Cir. 2005); <u>Natale v. Pfizer Inc.</u>, 379 F.Supp.2d 161 (D. Mass. 2005) (Young, C.J.); <u>Bush v. Cheaptickets, Inc.</u>, 377 F.Supp.2d 807 (C.D. Cal. 2005) (Anderson, J.); <u>Lander and Berkowitz, P.C. v. Transfirst Health Servs., Inc.</u>, 374 F.Supp.2d 776 (E.D. Mo. 2005) (Sippel, J.).

of civil actions when an action is first brought in state court and then removed to federal court... ."), and at least one appellate court has concluded that state law governs when an action is commenced for purposes of CAFA, Bush v. Cheaptickets, Inc., 425 F.3d 683, 686 (9th Cir. 1005).[8]  Accordingly, this court will look to Alabama law to determine when the instant lawsuit was commenced in state court.[9]

---

8. Moreover, in the specific context of cases removed from state court, federal courts have held that the meaning of the term "commencement" in 28 U.S.C. § 1446(b) is determined by state law.  See e.g., Sledz v. Flintkote Co., 209 F.Supp.2d 559, 561-62 (D. Md. 2002) (Davis, J.); Howell v. St. Paul Fire & Marine Ins. Co., 955 F.Supp. 660, 663 (M.D. La. 1997) (Polozola, J.); Greer v. Skilcraft, 704 F.Supp. 1570, 1582-83 (N.D. Ala. 1989) (en banc) (Pointer, C.J.).

9. Although there may be some circumstances where state procedural rules frustrate the federal purpose and federal courts must construe  procedural requirements through federal common law, see North Star Steel Co. v. Thomas, 515 U.S. 29, 34 (1995) ("[W]e have recognized a closely circumscribed and narrow exception to the general rule [that looks to state law to fill in procedural gaps] ... based on the common sense that Congress would not wish courts to apply a limitations period that would only stymie the federal cause of action.") (internal quotations and citation omitted), there is no indication

(continued...)

Eufaula Drugs filed its complaint in state court on February 14, 2005, but did not provide the summons or certified mail card or pay the postage to the state-court clerk until February 28. Because CAFA's cut-off date is February 18, 2005, if the case "commenced" upon the filing of the complaint, then CAFA does not apply; however, if the case did not "commence" until the summons and mail card were filed and the postage was paid by Eufaula Drugs, then CAFA would apply.

## ii.

Under Alabama Rule of Civil Procedure 3, "A civil action is commenced by filing a complaint with the court." Nonetheless, Alabama courts have long recognized one exception to this rule: When the circumstances of a case reflect that the plaintiff did not have a bona fide intention to have process immediately served upon the

---

9. (...continued)
that Alabama's procedural rules thwart the federal purpose behind CAFA.

defendants, the action has not commenced.  <u>Ex parte East
Alabama Mental Health-Mental Retardation Bd., Inc.</u>, ___
So.2d ___, 2006 WL 672685, at *1 (Ala. March 17, 2006).

Although this exception is long-standing, the Alabama
Supreme Court has categorically applied it in only a few
situations: where the plaintiff failed to pay the filing
fee or seek waiver of it, 1975 Ala. Code § 12-19-70,
thereby failing to meet a statutory requirement for
commencing a lawsuit, <u>De-Gas, Inc. v. Midland Resources</u>,
470 So.2d 1218 (Ala. 1985); or where the plaintiff failed
to include the defendant's address and instructions for
service in the complaint, with the result that it was
literally impossible for the clerk to begin service of
process, <u>Maxwell v. Spring Hill College</u>, 628 So.2d 335
(Ala. 1993); <u>Latham v. Phillips</u>, 590 So.2d 217 (Ala.
1991); <u>Pettibone Crane, Inc. v. Foster</u>, 485 So.2d 712
(Ala. 1986); or where the plaintiff filed his complaint
with specific instructions that it not be served at that
time, thus specifically manifesting an intent that the

18

complaint not be immediately served, <u>Freer v. Potter</u>, 413 So.2d 1079, 1080 (Ala. 1982); <u>Ward v. Sabena Appliance Co.</u>, 391 So.2d 1030 (Ala. 1980).[10]

None of the circumstances presented in these cases are present in the case at bar.[11]   First, primary

_____

10. In <u>Maxwell</u> and <u>Latham</u>, in addition to failing to give the defendants' addresses or instructions for service, the plaintiff failed to file a summons. <u>Maxwell</u>, 628 So.2d at 336; <u>Latham</u>, 590 So.2d at 217-18. This court does not read either case to stand for the proposition that failure to file a summons is dispositive evidence that the plaintiff did not have a bona fide intent to commence the action.   <u>Latham</u> and <u>Maxwell</u> are both essentially summary decisions.   Neither decision is clear as to whether the failure to file a summons contributed to the conclusion that the action had not commenced.    Indeed, neither decision provides any analysis or insight into why that fact might be relevant at all.   As explained below, categorically concluding that the action had not commenced based on the plaintiff's failure to file a summons would constitute a significant expansion of the Alabama Supreme Court's earlier decisions and would run contrary to the Alabama Rules of Civil Procedure.   The court does not believe the Alabama Supreme Court would have drastically changed the rule about when an action commenced without at least explaining why.

11. At oral argument, Eufaula Drugs urged this court to hold that the adoption of Alabama Rule of Civil Procedure 4(b) in 2004 made the Alabama Supreme Court cases cited throughout this opinion obsolete.   Rule 4(b)
(continued...)

---

11. (...continued)
provides:

> "Time Limit for Service. If service of
> the summons and complaint is not made
> upon a defendant within 120 days after
> the filing of the complaint, the court,
> upon motion or on its own initiative,
> after at least fourteen (14) days'
> notice to the plaintiff, may dismiss the
> action without prejudice as to the
> defendant upon whom service was not made
> or direct that service be effected
> within a specified time; provided,
> however, that if the plaintiff shows
> good cause for the failure to serve the
> defendant, the court shall extend the
> time for service for an appropriate
> period. This subdivision does not apply
> to fictitious-party practice pursuant to
> Rule 9(h) or to service in a foreign
> country."

The Alabama Supreme Court recently suggested that this
argument warranted serious consideration, but concluded
that the issue had not been presented on appeal and
declined to consider it.  <u>Ex parte East Alabama Mental
Health-Mental Retardation Bd., Inc.</u>, ___ So.2d at ___,
2006 WL 672685, at *5, n.6.

Because this court concludes that Eufaula Drugs
intended to serve process immediately when the complaint
was filed, this court need not reach the question.  Were
this issue integral to the resolution of this case,
however, this court would certify the question to the
Alabama Supreme Court because the proper interpretation
(continued...)

responsibility to prepare a summons, to prepare a certified mail card, and to pay the postage rests with the clerk of the court. It is initially the clerk's responsibility to prepare the summons, not the plaintiff's. Ala. R. Civ. P. 4(a)(1) ("Upon the filing of the complaint ... the clerk shall forthwith issue the required summons."). It also appears to be the clerk's responsibility, initially, to fill out the certified mail cards and provide postage. Ala. R. Civ. P. 4(i)(2)(B) ("In the event of service by certified mail, the clerk shall place a copy of the process and complaint or other document to be served in an envelope and shall address the envelope to the person to be served with instructions to forward. ... The clerk shall affix adequate postage and place the sealed envelope in the United States mail as certified mail with instructions to forward, return receipt requested, with instructions to the delivering

_____

11. (...continued)
of a new provision in the Alabama Rules of Civil Procedure should be decided by the Alabama Supreme Court in the first instance if possible.

postal employee to show to whom delivered, date of delivery, and address where delivered. The clerk shall forthwith enter the fact of mailing on the docket sheet of the action and make a similar entry when the return receipt is received.").

To be sure, the Alabama rules allow the clerk to request that the plaintiff complete the summons and the certified mail card when the complaint is filed. Ala. R. Civ. P. 4(a)(5) ("[W]hen requested by the clerk, the plaintiff shall also furnish sufficient properly completed copies of the summons or other process. When the plaintiff has requested service by certified mail, the plaintiff, at the request of the clerk, shall also furnish properly completed postal forms necessary for such service."). However, a plaintiff cannot know if the clerk will request such action until after the complaint is filed, and it would be illogical to make a categorical inference about the plaintiff's intent at the time the complaint is filed based solely on action taken by the

22

clerk after the complaint is filed.  Of course, a standing local rule might put a plaintiff on notice ahead of time, but, assuming that such a mandatory rule is permissible in Alabama despite Ala. R. Civ. P. 83 ("All local rules are abolished effective April 14, 1992, and no local rules shall thereafter be permitted."), no such local rule is present here.

Second, it was not impossible for the Barbour County clerk's office to begin service without additional action by Eufaula Drugs, a fact which both Nix (the clerk) and Howard (the deputy clerk) acknowledged.  The clerk could have filled out the summons and postage card just as easily as Eufaula Drugs because Eufaula Drugs had included Tmesys's address and instructions for service in the complaint.  Indeed, Howard testified that she had done so for other plaintiffs on several occasions.  The clerk was also capable of paying for and affixing the postage, even though this clerk's office had a tight

23

budget.   Nix testified that his office had done so at
least half a dozen times.

In sum, only in limited circumstances has the Alabama
Supreme Court dispositively inferred that a plaintiff did
not intend to immediately serve a complaint.   Because
none of those circumstances are present here, this court
could not categorically make such an inference without
significantly altering Alabama law on this subject.
Nonetheless, Tmesys urges this court to do so because
Eufaula Drugs failed to comply with the informal practice
of the Barbour County clerk's office that a plaintiff
submit a completed summons, postage card, and postage
along with the complaint.

Notably, the Alabama Supreme Court recently rejected
this argument in closely analogous circumstances, holding
that a plaintiff's failure to comply, in a timely manner,
with an informal policy that shifts a responsibility of
the clerk to the plaintiff is not dispositive evidence
that the plaintiff intended to delay service.   <u>Ex parte</u>

**24**

East Alabama Mental Health-Mental Retardation Bd., Inc., ___ So.2d at ___, 2006 WL 672685, at *4.  After the plaintiff filed the complaint, the clerk, through an informal policy, required the plaintiff to pay the postage and serve the summons through certified mail; however, the plaintiff did not actually mail the summons for over two months, during which time the limitations period expired.  Id., at *1.

In rejecting defendant's contention that the suit was barred by the statute of limitations, the court explained that Alabama Rule of Civil Procedure 4(i)(2) contemplates that the clerk, and not the plaintiff, will mail the summons, and noted that the clerk had shifted that responsibility to the plaintiff through its informal policy.  Id. at *4.  The court found that the delay may have been "some evidence indicating that, at the time he filed the complaint, [the plaintiff] lacked the intention to immediately serve the summons and complaint," but the

25

court nonetheless concluded that the action was commenced when the complaint was filed.  Id.

Similarly here, this court is not saying that a plaintiff's failure to comply with a local, informal practice, such as the one adopted by the Barbour County clerk's office, might not "be some evidence indicating that, at the time he filed the complaint, [the plaintiff] lacked the intention to immediately serve the summons and complaint," id.; indeed, there may be circumstances when a plaintiff's failure to comply with a local, informal practice, in the context of all the evidence, may provide sufficient evidence of the plaintiff's intent that there not be immediate service.  Rather, this court is simply saying that such failure is not a categorical or conclusive indication of such intent.

### iii.

Within the broader history and context of Alabama's civil procedure system, this rejection of a categorical,

as opposed to a fact-specific, approach when local, informal practices are at issue is hard to question.  The Alabama Rules of Civil Procedure were adopted in 1973 to "effect an integrated procedural system vital to the efficient functioning of the courts."  Ala. R. Civ. P. 1(b).  The committee that drafted the rules explained that "the policy of rules such as these is to disregard technicality and form in order that the civil rights of litigants may be asserted and tried on the merits."  Ala. R. Civ. P. 1, Committee Comments on 1973 Adoption.

The original version of the rules allowed courts to adopt local rules.  However, local rules were abolished in 1992 because "the proliferation of local rules throughout the state has done much to destroy the desired uniformity of these procedural rules."  Ala. R. Civ. P. 83, Committee Comments to 1992 Amendment.  Although local rules take many forms and have many appellations, "[h]owever denominated, all such rules regulating practice or procedure are [now] abolished."  Id.

27

There would be little difference between the local rules abolished by the Rule 83 and "unofficial practices" like the one at issue here if non-compliance with such a practice could dispositively adversely affect a litigant's rights.   For example, each of the clerks in the 67 counties in Alabama could adopt different "practices" regarding summonses and certified mail service procedures, which undoubtedly regulate practice and procedure.  Were these practices to become mandatory, the State could have 67 different rules on when a case is "commenced," lawyers would be required to learn the intricacies of the local practices, and parties might be barred from pursuing their claims because they were unfamiliar or forgot about a peculiar local practice that is inconsistent with, or at least not required by, the published Alabama Rules of Civil Procedure.

Allowing, categorically and dispositively, such local practices to affect litigants' rights would seriously undermine the goal of a uniform procedural system in

Alabama.  Although clerks' offices are certainly welcome to encourage practices in their jurisdictions that make their difficult jobs easier and lawyers should be encouraged to comply, a plaintiff's failure to provide such courtesies cannot conclusively affect whether an action has commenced without seriously undermining the central purpose of the Alabama Rules of Civil Procedure, which is to "effect an integrated procedural system vital to the functioning of the courts," Ala. R. Civ. P. 1.

### iv.

Applying these principles and having considered all the evidence presented by Eufaula Drugs and Tmesys, this court makes the following factual finding:  When Eufaula Drugs filed its complaint on February 14, 2005, it had the specific intent that the complaint be served on that day.  The court is particularly impressed by the credible testimony from the Barbour County clerk's office staff that the office's informal policy on summons and postage

was not only just that, informal, but was also unevenly

applied, and the credible testimony from local counsel

for Eufaula Drugs that the only reason he did not furnish

a summons and postage was because his secretary was new

and inexperienced and slow and because he thought the

clerk's office would itself provide for immediate

service.  Any delay in service of process was therefore

unintentional.

The court rejects Tmesys's argument that the court

must infer that Eufaula Drugs did not intend that process

be immediately served because two-and-a-half weeks

elapsed between the filing of the complaint and the

filing of the summons, mail card, and postage.  Even

assuming that the clerk's office requested that Eufaula

Drugs complete those tasks the day the complaint was

filed, this court is not convinced by the evidence, taken

as a whole, that Eufaula Drugs's failure to respond

immediately to the clerk's request was motivated by an

intent to delay service of process.  See Ex parte East

30

**Alabama Mental Health-Mental Retardation Bd., Inc.**, ___ So.2d at ___, 2006 WL 672685, at *4 (plaintiff's failure to complete a task, which was the clerk's responsibility, but which the clerk had requested that plaintiff complete, for two-and-a-half months was not sufficient to support an inference that plaintiff intended to delay service of process).

***

For the foregoing reasons, the court concludes that (1) complete diversity-of-citizenship jurisdiction, based on § 1367, is lacking and (2), because this action commenced on February 14, 2005, CAFA does not apply. Accordingly, this court lacks subject-matter jurisdiction to hear this case.  An appropriate judgment remanding this case to state court will be entered.

DONE, this the 22nd day of May, 2006.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE